## EXHIBIT C

## COMPLIANCE AND ETHICS PROGRAM

Fresenius Kabi Oncology Limited ("FKOL" or "the company") agrees to the provisions set forth in this Compliance and Ethics Program, which is incorporated by reference as part of the plea agreement between the Office of the United States Attorney for the District of Nevada and the United States Department of Justice, Consumer Protection Branch (collectively referred to herein as the "government") and FKOL.

In immediate response to its discovery of the events set forth in Exhibit B to this Plea Agreement, "Factual Basis—Fresenius Kabi Oncology Limited," FKOL reported the known conduct to the U.S. FDA ("FDA"), commenced an internal investigation and continued to disclose its findings to the FDA, took prompt disciplinary action against responsible managers, and cooperated in the FDA and DOJ investigations, all clearly demonstrating recognition and acceptance of responsibility for its conduct. In addition, the company promptly implemented a series of measures designed to prevent, detect, and deter similar conduct. FKOL's measures were multi-faceted and included improving computer system security controls, implementing unannounced audits, training internal auditors, hiring additional quality personnel, retaining outside experts, training all employees on cGMP as well as compliance and ethics, revising standard operating procedures, and establishing local and global reporting hotlines. In addition to the changes instituted locally at FKOL, the Fresenius Kabi organization implemented changes to bring issues more quickly to the attention of global Fresenius Kabi management by increasing oversight over local plant management. In addition to these measures that have been in place for a number of years, FKOL and the government further agree as follows:

1

## I.    Compliance and Ethics Program

1.    Within thirty (30) business days after the court imposes a sentence in this matter, FKOL will institute and maintain a compliance and ethics program that governs any business operations of FKOL in or directed to the United States, or relating to any FKOL article (including any "drug," as defined by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 321(g)(1)) intended for distribution to the United States (the "Compliance and Ethics Program"). The purpose of the Compliance and Ethics Program is, as set forth herein, (a) to prevent, detect, and correct violations of United States law; (b) to assure the continuation of compliance-related policies and procedures for business operations; (c) to assure the continued development of training and other programs designed to educate employees regarding applicable policies, procedures, and standards; (d) to conduct auditing and monitoring of the effectiveness of applicable policies, procedures, and standards; (e) to assure that there is a mechanism for internal reporting of questionable or inappropriate activities to enable timely investigation and resolution; and (f) to assure that appropriate corrective action is taken to prevent recurrence of misconduct.

2.    The Compliance and Ethics Program will consist of a Chief Compliance Officer who reports to the Board of Directors of FKOL and sits on the staff of the Chief Executive Officer of FKOL, a Compliance Committee comprised of senior executives which meets at least four times a year, a comprehensive set of policies and procedures governing the conduct of its employees, a training program designed and used to educate all FKOL employees on the company's compliance policies and procedures, a hotline to allow employees to report potential violations of law or the company's compliance policies and procedures, an anti-retaliation policy, and a monitoring and auditing program designed to deter and detect compliance issues. The Chief Compliance Officer is responsible for overseeing the administration and

2

implementation of the Compliance and Ethics Program.  The Chief Compliance Officer reports at least quarterly on the Compliance and Ethics Program to the Board of Directors.  The Chief Compliance Officer has direct access to senior executives vested with the authority to direct and implement compliance-related changes in FKOL if necessary.  The Chief Compliance Officer has the authority to exercise independent judgment in assessing compliance-related matters.  The Chief Compliance Officer has the authority to seek advice from outside legal counsel or other outside experts when appropriate.  The Chief Compliance Officer is authorized to report issues of any kind directly to the Board of Directors of FKOL (or a Committee thereof).

3.      FKOL will include and maintain compliance policies and procedures designed to prevent, detect, and correct violations of the Federal Food, Drug, and Cosmetic Act ("FDCA") relating to: (1) the manufacture of active pharmaceutical ingredients and drug products (collectively, "drugs") intended for distribution to or within the United States in accordance with current Good Manufacturing Practice ("cGMP"); (2) the creation and maintenance of manufacturing records as required by the FDCA; and (3) the truthful and complete disclosure, as required by the FDCA or other provisions of federal law, of material information concerning FKOL's drug manufacturing practices or activities.

II.     **Notice to Healthcare Providers and Entities**

4.      Within thirty (30) days after the court imposes a sentence in this matter and for a period of one (1) year thereafter, FKOL shall post in an appropriately prominent place on the FKOL website (www.fresenius-kabi-oncology.com) a notice, dated and signed by the Chief Executive Officer of FKOL, containing the language set forth below:

> As you may be aware, FKOL recently entered into a  criminal
> settlement with the United States in connection with FKOL's
> intentional concealment of records from the United States Food
> and Drug Administration ("FDA") during a 2013 FDA inspection

3

of an FKOL manufacturing plant located in Kalyani, West Bengal, India (the "Kalyani plant"). This letter provides you with additional information about the settlement, explains FKOL's commitments going forward, and provides you with access to information about those commitments.

On [date], the United States District Court for the District of Nevada accepted the criminal settlement agreed to between the U.S. Department of Justice and FKOL. The charges and resolution related to a January 2013 FDA inspection of an FKOL active pharmaceutical (API) manufacturing plant in Kalyani India that manufactured certain APIs intended for the U.S. market. During that inspection, an FDA inspector was refused access to records in violation of the Federal Food, Drug and Cosmetic Act ("FDCA"). In addition, the criminal settlement related to FKOL's violations of current Good Manufacturing Practice ("cGMP") in its manufacture of active pharmaceutical ingredients, and FKOL's intentional concealment of records concerning these cGMP violations during that inspection of the Kalyani plant. As part of its criminal settlement, FKOL agreed to pay $50,000,000 to the United States government. FKOL also implemented a Compliance and Ethics Program (the "Compliance Program"). In addition to FKOL's existing FDA regulatory compliance procedures, the Compliance Program is designed to prevent, detect, and correct intentional violations of the FDCA. In particular, the Compliance Program seeks to prevent and detect intentional misconduct and intentional deviation from cGMP in the manufacturing of drugs, to prevent and detect intentional misconduct regarding the creation and maintenance of manufacturing records, and to promote transparency in all regulatory interactions with the FDA. More information about this criminal settlement may be found at the following websites: **[The notice shall include a link to the Consumer Protection Branch and Nevada U.S. Attorney's Office websites.]**

Please call FKOL's Ethics and Integrity Helpline at [insert phone number] or visit us at [insert website] if you have questions about the settlement referenced above or to report any instances in which you believe that FKOL engaged in improper conduct with respect to the manufacture or distribution of drugs. Alternatively, you may report any improper conduct associated with FKOL's manufacture or distribution of drugs to the FDA's Office of Regulatory Affairs at 1-888-463-6332.

5.      The Chief Compliance Officer (or a designee) shall maintain a log (the "Log") of all calls and messages received by the Compliance and Ethics Program that report issues or

4

questions associated with FKOL's policies, conduct, practices or procedures with respect to an FDA requirement believed by the individual to be a potential violation of criminal law, as further defined below in Section 10 as a Reportable Event. The Log shall include any such calls or messages in response to the notice above. The Log shall include a record and summary of each call and message received (whether anonymous or not), the status of the call or message, and any corrective action taken in response to the call or message. FKOL shall produce the Log to the government within ten (10) days of a written request for such production, for a period of three (3) years following the court's imposition of a sentence this matter.

### III.    Certifications and Board Resolutions

6.    FKOL will conduct the reviews described in Paragraphs 7 through 9 below for each of three (3) Review Periods. The duration of each Review Period will be one (1) year, beginning with the first one-year period following the date of the court's imposition of a sentence in this matter. FKOL will provide the certifications and resolutions described in Paragraphs 7 through 9 below to the government within sixty (60) days following the end of each of the Review Periods.

7.    Following the end of each Review Period, the Chief Compliance Officer shall conduct a review of the Log described in Paragraph 5 above for the preceding Review Period. Based on his or her review, the Chief Compliance Officer shall submit to the government a signed certification (the "Log Certification") (a) stating that, to the best of his or her knowledge, during the preceding Review Period, FKOL maintained the Log pursuant to the Compliance and Ethics Program; and (b) stating the total number of calls and messages received by the Compliance and Ethics Program through its disclosure program, including any such calls or messages made in response to the notice in Paragraph 4, and the number of those calls and

messages for each month of the preceding Review Period that relate to allegations that a reasonable person would consider to constitute credible allegations of (1) an intentional violation of cGMP in connection with the manufacture of drugs, where such violation would warrant administrative or judicial enforcement action; (2) the systemic or repeated intentional failure to create or maintain manufacturing records as required by the FDCA; or (3) the intentional failure to disclose, as required by the FDCA or other provisions of federal law, material information concerning FKOL's drug manufacturing practices or activities.

8.    Following the end of each Review Period, the Chief Executive Officer of FKOL shall conduct a review of the effectiveness of the Compliance and Ethics Program for the preceding Review Period. Based on his or her review, the President of FKOL shall submit to the government a signed certification stating that, to the best of his or her knowledge based on a reasonable inquiry, during the preceding Review Period, the Compliance and Ethics Program was effective in identifying and preventing intentional violations of the FDCA. The certification shall summarize the review described above. If the President of FKOL is unable to certify that the Compliance and Ethics Program was effective in preventing intentional violations of the FDCA, he or she shall provide a detailed explanation of why the Compliance and Ethics Program was not effective and will state the steps FKOL is taking to ensure the effectiveness of the Compliance and Ethics program.

9.    Following the end of each Review Period, the Board of Directors of FKOL, or a designated Committee thereof (the "Board"), shall conduct a review of the effectiveness of the Compliance and Ethics Program for the preceding Review Period. This review shall include, but not be limited to, updates and reports by the Chief Compliance Officer and other personnel regarding compliance matters. The Board shall evaluate the effectiveness of the Compliance and

6

Ethics Program, including, at a minimum, by receiving updates about the activities of the Compliance Committee and updates about the adoption and implementation of policies, procedures, and practices to ensure compliance with the FDCA. Based on its review, the Board shall submit to the government a resolution that summarizes its review and oversight as set forth above and that includes, at a minimum, the following language:

> The Board of Directors of FKOL (or a designated Committee of the board) has made a reasonable inquiry as described in Exhibit C to the plea agreement with FKOL into the operations of the Compliance and Ethics Program for the preceding Review Period, [insert date range], including the performance of the Chief Compliance Officer and the Compliance Committee. Based on its inquiry and review, the Board has concluded that, to the best of its knowledge, FKOL has implemented an effective compliance program, as defined in the United States Sentencing Commission Guidelines Manual, Chapter 8: Sentencing of Organizations, to meet the requirements of the Federal Food, Drug, and Cosmetic Act, and as set forth in Exhibit C to the plea agreement.

If the Board is unable to provide any part of this statement, it shall include in the resolution a written explanation of the reasons why it is unable to provide such a statement.

## IV.    Additional Reporting Obligations

10.    A "Reportable Event" means any set of facts or allegations that, after a reasonable opportunity to conduct an appropriate review or investigation of the allegations, a reasonable person would consider to constitute credible allegations of: (1) an intentional violation of cGMP in connection with the manufacture of drugs, where such violation would warrant administrative or judicial enforcement action in the form of seizure, injunction, or criminal prosecution; (2) the systemic or repeated intentional failure to create or maintain manufacturing records as required by the FDCA where such failure would warrant administrative or judicial enforcement action in the form of seizure, injunction, or criminal prosecution; or (3) the intentional failure to disclose,

7

as required by the FDCA or other provisions of federal law, material information concerning FKOL's drug manufacturing practices or activities where such failure would warrant administrative or judicial enforcement action in the form of seizure, injunction, or criminal prosecution. A Reportable Event may be the result of an isolated event or a series of occurrences.

11.    For a term of three (3) years following the court's imposition of a sentence in this matter, FKOL shall submit quarterly reports to the government stating in writing whether any Reportable Events have been determined to have occurred during the preceding calendar quarter, and providing updated information about Reportable Events that FKOL determined to have occurred during any prior calendar quarter, as may be necessary in the reasonable determination of FKOL or at the government's request.

12.    FKOL shall submit each quarterly report no later than fifteen (15) days following the end of each calendar quarter (that is, by January 15 for the calendar quarter ending December 31, April 15 for the calendar quarter ending March 31, July 15 for the calendar quarter ending June 30, and October 15 for the calendar quarter ending September 30).

## V.    Filing of Certifications, Resolutions, and Reports

13.    The certifications referenced above in Paragraphs 7 and 8 shall be sworn to under penalty of perjury and shall set forth that the representation contained therein may be provided to, relied upon, and material to the government of the United States, and that a knowing false statement could result in criminal or civil liability for the signatory. The certifications referenced above in Paragraphs 7 and 8, the resolutions referenced above in Paragraph 9, and the quarterly reports referenced above in Paragraph 11, should be sent to:

Director, Consumer Protection Branch
U.S. Department of Justice

8

P.O. Box 386
Washington, DC 20044

Chief, Criminal Division
U.S. Attorney's Office
District of Nevada
501 Las Vegas Boulevard South
Suite 1100
Las Vegas, NV 89101

## VI.    Breach of this Compliance and Ethics Program

14.    FKOL recognizes and acknowledges that each of the terms in this Compliance and Ethics Program constitutes a material term of this Compliance and Ethics Program.  As a contractual remedy, FKOL and the government agree that failure to comply with the obligations set forth in this Compliance and Ethics Program may lead to the imposition of the following monetary penalties (hereafter "Stipulated Penalties"), in accordance with the following provisions:

a.  A Stipulated Penalty of $5,000 per day for each day that FKOL (1) fails to maintain a Compliance and Ethics Program as set forth in section I above; (2) fails to timely supply the certifications and board resolutions as set forth in Section III above; or (3) fails to timely supply the quarterly reports as set forth in Section IV above.  With regard to the certifications, board resolutions, and quarterly reports, the Stipulated Penalty will begin to accrue on the first day after the date the document was due, subject to the provisions for extension of time for compliance and the opportunity to cure set forth below.

b.  FKOL may submit a timely written request for an extension of time to provide the certifications, resolutions, or quarterly reports required above.  A written request is timely if it is received by the U.S. Attorney's Office for the District

of Nevada and the Consumer Protection Branch, U.S. Department of Justice, at least five business days prior to the date by which the certification, resolution, or quarterly report is due. Timely requests for extension will not be unreasonably denied. If an extension of time is granted in writing, Stipulated Penalties shall not accrue until one day after FKOL fails to meet the revised deadline. If not granted, Stipulated Penalties shall not begin to accrue until three business days after FKOL receives the government's written denial of such request or the original deadline, whichever is later.

c. Upon the government's reasonable determination that FKOL has failed to comply with any of the obligations described herein, the government shall notify FKOL in writing of FKOL's failure to comply and the government's exercise of its contractual right to demand payment of the Stipulated Penalties (the "Demand Letter"). The Demand Letter shall set forth: (1) the provision(s) breached; (2) the date of the breach; (3) a description of the breach sufficient to permit FKOL to cure (as described below); and (4) the amount of Stipulated Penalties claimed by the government as of the date of the Demand Letter. Within fourteen (14) days after receipt of the Demand Letter, or such other period as the government may agree in writing, FKOL shall cure the breach to the government's reasonable satisfaction ("Cure Period"). If FKOL cures the breach within the Cure Period, no Stipulated Penalties shall be due. If FKOL fails to cure the breach during the Cure Period, Stipulated Penalties calculated from the date of breach to the date of payment shall be immediately payable to the government. The Stipulated

10

Penalties shall be paid by electronic fund transfer according to wire instructions that will be provided by the government. A joint reasonable determination by the United States Attorney's Office for the District of Nevada and the United States Department of Justice's Consumer Protection Branch as to whether FKOL has cured any breach will be final and non-appealable. FKOL agrees that the United States District Court for the District of Nevada shall have jurisdiction over any action to collect a penalty. If FKOL fails to timely make a payment required by this Compliance and Ethics Program, interest (at the rate specified in Title 28, United States Code, Section 1961) shall accrue on the unpaid balance through the date of payment.

15. The absence of a Demand Letter from the government is not, and shall not be construed as, evidence of compliance with this Compliance and Ethics Program, the FDCA, or any other applicable laws, policies, or procedures.